1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10          **WESTERN DIVISION**

11

12   PETER FLORES, et al.,                    )   No. CV 13-3898-PLA
                                              )
13                  Plaintiffs,               )   **ORDER RE DEFENDANT'S MOTION TO**
                                              )   **DISMISS THE FIRST AMENDED**
14          v.                                )   **COMPLAINT**
                                              )
15   NATIONSTAR MORTGAGE LLC, et al.,         )
                                              )
16                  Defendants.               )
                                              )

17

18          Plaintiffs Peter and Sylvia Flores have filed suit against defendant Nationstar Mortgage

19   LLC, alleging that defendant breached its promise not to foreclose on plaintiffs' real property.  On

20   September 3, 2013, defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint[1]

21   pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  Plaintiff's filed an Opposition

22   to the Motion, and defendant has filed a Reply.  For the reasons explained below, defendant's

23   Motion is **granted in part** and **denied in part**.

24

25          [1]   Without addressing the merits of defendant's contentions in a prior motion to dismiss the
26   original Complaint, or the adequacy of any of plaintiffs' allegations contained in that Complaint,
     plaintiffs' original Complaint was dismissed with leave to amend on July 22, 2013, by the District
27   Judge who was previously presiding over this action.  (See Docket No. 10).

28          [2]   Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim
     upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).

1       **A.      Relevant Facts**

2               Plaintiffs allege the following in the First Amended Complaint ("FAC"):

3               On or about March 3, 2006, plaintiffs entered into a consumer loan transaction with First

4       Guaranty Financial Corporation to refinance a single family property located in Downey, California.

5       As part of the loan transaction, plaintiffs executed a promissory note in favor of First Guaranty and

6       granted First Guaranty a security interest in the property in the form of a deed of trust.  (FAC ¶ 12).

7       The promissory note was sold and/or transferred to defendant in December 2012.  (FAC ¶ 13).

8               After plaintiffs encountered difficulties making monthly payments, they began "actively

9       negotiating a revised payment plan" with defendant.  (FAC ¶ 14).  Defendant's representatives

10      assured plaintiffs that, "as parties entitled to foreclose upon the subject property in the event of

11      default, they would refrain from doing so, until and unless the parties were unable to reach an

12      agreement."  (Id.).

13              Before any agreement was reached, however, defendant "exercised their rights under the

14      security instrument by instituting foreclosure proceedings upon the subject property."  (FAC ¶ 15).

15      On or around March 22, 2013, the property was taken back by defendant at a nonjudicial

16      foreclosure sale.  (Id.)

17      **B.      Plaintiffs' Causes of Action**

18              In the FAC, plaintiffs challenge defendant's practice of "dual tracking," whereby defendant

19      proceeded with a foreclosure while simultaneously engaging in loan modification negotiations with

20      plaintiffs.  (See FAC n.1).  Plaintiffs assert six causes of action against defendant:  (1) promissory

21      estoppel; (2) breach of oral contract; (3) unfair business practices under California Business and

22      Professions Code § 17200, et seq.; (4) negligence; (5) violation of the California Homeowner Bill

23      of Rights (California Civil Code § 2923.6); and (6) violation of 15 U.S.C. § 1641(g).

24      **C.      Rule 12(b)(6) Standard**

25              A Rule 12(b)(6) motion to dismiss tests the sufficiency of a statement of claim for relief.  A

26      complaint may be dismissed as a matter of law for failure to state a claim for two reasons:  (1) lack

27      of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  See Balistreri

28      v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) (as amended).  In determining whether

1   a complaint states a claim on which relief may be granted, its allegations of material fact must be

2   taken as true and construed in the light most favorable to plaintiffs.  See Love v. United States,

3   915 F.2d 1242, 1245 (9th Cir. 1990).  However, "[t]hreadbare recitals of the elements of a cause

4   of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S.

5   662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  The complaint must plead "enough facts to

6   state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

7   570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A claim is plausible on its face "when the plaintiff

8   pleads factual content that allows the court to draw the reasonable inference that the defendant

9   is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin

10  to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

11  acted unlawfully."  Id.  Courts may dismiss a case without leave to amend only if the plaintiff is

12  unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

13          Because the Court has diversity jurisdiction over this matter, California substantive law

14  applies.  Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d

15  659 (1996) ("[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal

16  procedural law.").

17          With the above standard in mind, the Court addresses defendant's arguments below.

18          **1.      Failure to Tender**

19          First, defendant argues that plaintiffs cannot maintain any cause of action based on

20  irregularities in the foreclosure process because they failed to allege valid tender of their debt.

21  (Motion at 3).  In the Opposition, plaintiffs assert that they are not required to allege tender

22  because they are not asking to have the nonjudicial foreclosure set aside.  Rather, their claims

23  address defendant's actions during the loan modification process, not the foreclosure process

24  itself.  (See Opposition at 6-7 (stating that the "FAC is not premised on improper nonjudicial

25  foreclosure but rather on [defendant's] promise not to foreclose.")).

26          "A tender is an offer of performance made with the intent to extinguish the obligation."

27  Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (Cal.App. 2

28  Dist. 1984) (quotations and citation omitted).  "When a debtor is in default of a home mortgage

1    loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible

2    tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure."

3    Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. Jul. 16, 2009).  In FPCI RE–HAB

4    01 v. E & G Investments, Ltd., 207 Cal.App.3d 1018, 255 Cal.Rptr. 157 (Cal.App. 2 Dist. 1989),

5    the California Court of Appeal explained:

6              [G]enerally an action to set aside a trustee's sale for
               irregularities in sale notice or procedure should be accompanied by an
7              offer to pay the full amount of the debt for which the property was
               security.  This rule ... is based upon the equitable maxim that a court
8              of equity will not order a useless act performed.  A valid and viable
               tender of payment of the indebtedness owing is essential to an action
9              to cancel a voidable sale under a deed of trust.  [¶]  The rationale
               behind the rule is that if plaintiffs could not have redeemed the
10             property had the sale procedures been proper, any irregularities in the
               sale did not result in damages to the plaintiffs.

11

12   207 Cal.App.3d at 1021-22 (quotations and citations omitted).

13             Here, the Court observes that the FAC challenges defendant's alleged failure to abide by

14   the promise to delay foreclosure unless and until the parties negotiated a mutually agreeable loan

15   modification.   The FAC does not address irregularities with the foreclosure process itself.

16   Moreover, plaintiffs seek damages, not the specific equitable relief of setting aside the foreclosure

17   sale. (See FAC at 11-12; Opposition at 6 (stating "nowhere in their FAC did Plaintiffs ask to have

18   the nonjudicial foreclosure set aside")).  Accordingly, the Court concludes that, because plaintiffs

19   are challenging the loan modification process and not the foreclosure process, and thus are not

20   attempting to set aside the foreclosure sale, the tender rule does not apply.  See, e.g., Juarez v.

21   Suntrust Mortg., Inc., 2013 WL 1983111, at **8-9  (E.D. Cal. May 13, 2013) ("The complaint

22   addresses failure to modify the Juarezes' loan and seeks damages, not equitable relief to set

23   aside the foreclosure sale.  Given the absence of requested equitable relief, the tender rule does

24   not arise despite the complaint's indirect attack on the foreclosure which allegedly resulted from

25   failure to accomplish modification.").  Defendant's Motion to Dismiss the entire FAC based on

26   plaintiffs' failure to plead tender is **denied**.

27             **2.      Promissory Estoppel**

28        Defendant moves to dismiss plaintiffs' first cause of action for promissory estoppel.

4

1    "In California, under the doctrine of promissory estoppel, 'A promise which the promisor

2    should reasonably expect to induce action or forbearance on the part of the promisee or a third

3    person and which does induce such action or forbearance is binding if injustice can be avoided

4    only by enforcement of the promise. . . .' [Citations.]   Promissory estoppel is 'a doctrine which

5    employs equitable principles to satisfy the requirement that consideration must be given in

6    exchange for the promise sought to be enforced.'"  Fontenot v. Wells Fargo Bank, N.A., 198

7    Cal.App.4th 256, 275, 129 Cal.Rptr.3d 467 (Cal.App. 1 Dist. 2011) (quotations and citation

8    omitted).   The elements of a claim for promissory estoppel are:   "(1) a promise clear and

9    unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance

10   must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured

11   by his reliance."  Advanced Choices, Inc. v. Dept. of Health Services, 182 Cal.App.4th 1661, 1672,

12   107 Cal.Rptr.3d 470 (Cal.App. 2 Dist. 2010) (internal quotations and citation omitted).  "To be

13   enforceable, a promise need only be definite enough that a court can determine the scope of the

14   duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the

15   assessment of damages. . . .  [T]hat a promise is conditional does not render it unenforceable or

16   ambiguous."  Aceves v. U.S. Bank, N.A., 192 Cal.App.4th 218, 226, 120 Cal.Rptr.3d 507 (Cal.App.

17   2 Dist. 2011)  (citations and quotations omitted).

18          In the context of forbearance and loan modifications, "allegations that the plaintiff undertook

19   new obligations or forewent other options can establish reliance for purposes of a promissory

20   estoppel claim."  Meadows v. First American Trustee Servicing Solutions, LLC, 2012 WL 3945491,

21   at *4 (N.D. Cal. Sep. 10, 2012).   However, a claim for promissory estoppel is not viable if the

22   action taken in reliance on the promise to hold off on a foreclosure was nothing more than the

23   borrower's agreement to resume making payments on the promissory note.   Fontenot, 198

24   Cal.App.4th at 275.

25          Plaintiffs allege in the FAC that defendant agreed to not foreclose on the subject property

26   "until and unless the parties were unable to reach an agreement" regarding modifying the loan

27   agreement.  (FAC ¶ 14).  Plaintiffs further allege that defendant's assurances about not carrying

28   out foreclosure proceedings while the parties were negotiating loan modification amounted to "a

5

1  promise not to foreclose, conditioned only upon Plaintiffs' continued willingness to renegotiate

2  payment terms." (FAC ¶ 17).

3         In the Motion, defendant asserts that plaintiffs' claim for promissory estoppel is deficient

4  because they have not shown that a "clear and unambiguous" promise was made between the

5  parties, or, in turn, specified "who made the alleged promise, when it was made, what the specified

6  terms of the expected modification entailed or roughly when they even expected to receive it."

7  (Motion at 5). Defendant further asserts that dismissal is warranted because plaintiffs failed to

8  allege that they suffered recoverable damages as a result of having relied on a promise that a

9  modification would be provided, or to allege with any specificity what "alternative courses" they

10 could have pursued and why they were not sought. (Id.). According to defendant, nothing in the

11 alleged promise regarding modification prevented plaintiffs from taking other actions to ameliorate

12 their financial difficulties. (Motion at 6).

13        In the Opposition, plaintiffs maintain that defendant, through its employees and agents,

14 represented that foreclosure would not be instituted until a determination was made as to plaintiffs'

15 eligibility for a loan modification. In support of their argument that this constituted a clear and

16 unambiguous promise, plaintiffs cite, inter alia, Aceves, 192 Cal.App.4th 218. In Aceves, the

17 California Court of Appeal determined that the plaintiff, who had defaulted on her home loan and

18 ultimately lost the home to foreclosure, had alleged an actionable claim for promissory estoppel

19 against her lender, U.S. Bank. In particular, the Aceves court determined that U.S. Bank had

20 made a clear and unambiguous promise to not foreclose on the plaintiff's home without first

21 engaging in negotiations with her to reinstate and modify the loan on mutually agreeable terms.

22 The court explained its rationale as follows:

23                [The plaintiff] contends U.S. Bank promised but failed to
           engage in negotiations toward a solution of her loan problems. Thus,
24         the question here is simply whether U.S. Bank made and kept a
           promise to *negotiate* with [the plaintiff], not whether . . . the bank
25         promised to make a loan or, more precisely, to modify a loan. [The
           plaintiff] does not, and could not, assert she relied on the terms of a
26         *modified loan agreement* in forgoing bankruptcy relief. She
           acknowledges that the parties never got that far because U.S. Bank
27         broke its promise to negotiate with her toward a mutually agreeable
           modification. . . . [The plaintiff's] claim rests on whether U.S. Bank

28

6

1                 engaged in the promised negotiations.  The bank either did or did not
2                 negotiate.

3 Aceves, 192 Cal.App.4th at 226 (emphasis in original).

4        Similar to the situation in Aceves, defendant in this action is alleged to have made a

5 promise to negotiate with plaintiffs in an attempt to reach a mutually agreeable loan modification

6 and to delay foreclosure during the negotiation period.  Based on the reasoning set forth in

7 Aceves, the Court finds that this amounts to a clear and unambiguous promise sufficient for a

8 claim of promissory estoppel.  See Aceves, 192 Cal.App.4th at 226.

9        The Court further concludes that plaintiffs have sufficiently alleged that they reasonably

10 relied on defendant's promise to negotiate, the reliance was both reasonable and foreseeable, and

11 plaintiffs' reliance was to their detriment.  Specifically, plaintiffs allege that they relied on

12 defendant's promise not to foreclose "by completing a loan modification application and submitting

13 all requested documentation, instead of pursuing alternative courses of action in order to avoid

14 foreclosure, including, but not limited to, further refinancing with another lender, marketing and

15 selling the subject property, or filing [for bankruptcy], any one of which would have been a viable

16 option." (FAC ¶ 19).  Although plaintiffs do not provide any specifics regarding these alternative

17 courses -- such as which lender they would have worked with to try to refinance their mortgage

18 and the likelihood such refinancing would have prevented the foreclosure sale, the probability of

19 being able to sell their property to satisfy their mortgage obligations, or if they took any steps to

20 pursue bankruptcy relief -- the Court nevertheless concludes that, at a minimum, plaintiffs have

21 sufficiently alleged that they forewent pursuing actions in reliance on defendant's promise and that

22 they were injured by that reliance when they lost their property to foreclosure while loan

23 modification negotiations were still ongoing.  See, e.g., Salcido v. Aurora Loan Services, 2012 WL

24 123280 (C.D. Cal. Jan.17, 2012) (claim of promissory estoppel sufficiently alleged where borrower

25 reasonably relied upon promise to negotiate a loan modification by making improvements to her

26 home and by not filing for bankruptcy); Aceves, 192 Cal.App.4th at 226 (allegations that borrower

27 decided to forego bankruptcy relief based upon the lender's promise to negotiate a loan

28 modification sufficiently alleged reliance); Lawther v. Onewest Bank, 2010 WL 4936797, at *8

1  (N.D.Cal. Nov. 30, 2010) (plaintiff adequately alleged reliance by claiming "he did not search for

2  a seller, make any other effort to extricate himself from his mortgage, or seek a loan from another

3  lender in reliance on the expected modification").

4       For these reasons, the Court finds that plaintiffs' allegations are sufficient to survive a

5  motion to dismiss.  Accordingly, with respect to the claim of promissory estoppel, the Motion to

6  Dismiss is **denied**.

7            **3.**    **Breach of Oral Contract**

8       In support of the cause of action for breach of oral contract, plaintiffs allege in the FAC that

9  defendant's representatives "reiterated and assured Plaintiffs that they would not proceed or

10  continue with the foreclosure process while the proposed loan modification agreement was under

11  review and pending approval," but "breached this oral agreement . . . by instituting foreclosure

12  proceedings."  (FAC ¶¶ 24, 26).  Plaintiffs further allege:  "This oral agreement not to foreclose

13  was itself supported by consideration; throughout the negotiation process, Plaintiffs refrained from

14  exercising their rights to market and sell the subject property, refinance with another lender, to file

15  for bankruptcy, to retain counsel or enlist the services of a third party loan modification company."

16  (FAC ¶ 25).

17       Defendant in the Motion argues that plaintiffs' allegations are insufficient to establish the

18  existence of a contract because the promise to avoid taking some future action (in this case, the

19  foreclosure) is not enforceable as a binding contract.  Defendant further asserts that oral promises

20  to modify written agreements are unenforceable unless supported by new consideration and the

21  statute of frauds is satisfied, and that plaintiffs failed to "establish the existence of a contract as

22  well as consideration under that contract," and "altogether overlook[ed] the requirements imposed

23  by the statute of frauds."  (Motion at 7-8).

24       Under California law, the elements of a cause of action for breach of contract are:  (1) a

25  contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damage to plaintiff therefrom.

26  McDonald v. John P. Scripps Newspaper, 210 Cal.App.3d 100, 104, 257 Cal.Rptr. 473 (Cal.App.

27  2 Dist. 1989).  In turn, "a contract requires parties capable of consent, the consent of those parties,

28  a lawful object, and sufficient consideration."  ASP Properties Group v. Fard, Inc., 133 Cal.App.4th

1257, 1268-69, 35 Cal.Rptr.3d 343 (Cal.App. 4 Dist. 2005) (citing Cal. Civ. Code § 1550).  Under California Civil Code § 1605, consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor."  However, "[i]t is not enough . . . to confer a benefit or suffer prejudice for there to be consideration . . . [Additionally,] the benefit or prejudice 'must actually be bargained for as the exchange for the promise.'  Put another way, the benefit or prejudice must have induced the promisor's promise."  Steiner v. Thexton, 48 Cal.4th 411, 421, 106 Cal.Rptr.3d 252 (2010) (citation omitted).

Here, the FAC alleges that a binding contract was formed between plaintiffs and defendant when defendant's representative told plaintiffs that foreclosure would be delayed while plaintiffs' application for a loan modification was being reviewed and negotiated.  The FAC states that this agreement was supported by consideration, in that plaintiffs refrained from pursuing alternative options to avoid foreclosure. In the Opposition, however, plaintiffs appear to abandon that theory of consideration and instead argue that "[a]dequate consideration can be found in the form of [their] completion and submission of the loan modification application," as the application was not something they were required to do under the original contract, and if not for the application, they would have spent the time pursuing alternative measures to avoid the foreclosure.  (Opposition at 10).

The Court is not persuaded that plaintiffs have adequately alleged consideration based on their allegations that they refrained from pursuing alternative courses to avoid foreclosure.  There is no plausible showing in the FAC that plaintiffs' actions (or lack thereof) were "bargained for as the exchange for the promise."  Steiner, 48 Cal.4th at 421 (quotations and citation omitted).[3]

_____

[3]   Moreover, if the allegations concerning plaintiffs' decision to forego pursuing alternative courses to avoid foreclosure amounted to bargained-for consideration for a breach of contract claim, it appears those same allegations could not satisfy the detrimental reliance element of a promissory estoppel claim. See HMBY, LP v. City of Soledad, 2012 WL 1657124, at *5 (N.D. Cal. May 10, 2012) (Promissory estoppel "is inapplicable where the promisee's performance was requested by the promisor at the time the promise was made. Under such circumstances, the only
(continued...)

1  Additionally, as for plaintiffs' assertion in the Opposition that the act of filing the loan modification

2  application itself amounted to sufficient consideration, the Court is similarly unpersuaded.  See,

3  e.g., Banaga v. Taylor Bean Mortg. Co., 2011 WL 5056985, at *4 (N.D. Cal. Oct. 24, 2011) ("To

4  accept the premise that the very act of applying for a privilege to which one is not entitled creates

5  a binding contract between the applicant and the reviewer is unprecedented and would lead to

6  nonsensical results[.]").  In any event, plaintiffs' promissory estoppel claim is sufficient to address

7  defendant's alleged promise to delay foreclosure during the loan modification negotiations.  The

8  Court, however, will allow plaintiffs the opportunity to amend to allege a sufficient breach of oral

9  contract claim.  Because the Court finds that plaintiffs insufficiently alleged consideration and thus

10  failed to adequately allege the existence of a contract, the Court declines to address the parties'

11  statute of frauds argument.

12  The Court **grants** the Motion to Dismiss and **dismisses** the breach of oral contract cause

13  of action **with leave to amend**.

14  **4.    Unfair Business Practices**

15  In plaintiffs' third cause of action, they allege that defendant violated California Business

16  and Professions Code §§ 17200, et seq.  Specifically, plaintiffs allege that defendant committed

17  the following "deceptive" practices: assessing improper or excessive late fees; instituting improper

18  or premature foreclosure proceedings; falsely assuring plaintiffs that foreclosure would be

19  postponed while simultaneously proceeding with the process; and violating California Civil Code

20  § 2329.6.  (FAC ¶¶ 29-30).

21  Defendant argues that this cause of action should be dismissed because plaintiffs failed

22  to plead facts with reasonable particularity, and failed to allege they suffered an injury-in-fact and

23  have lost money or property as a result of defendant's actions.  (Motion at 8-9).

24  The Unfair Competition Law ("UCL"), codified as California Business and Professions Code

25  § 17200, was implemented to protect consumers and competitors by promoting fair competition

26

27  ³(...continued)
reliance which can make the promisor's failure to perform actionable is the promisee's doing what

28  was requested. If that reliance was detrimental, it would constitute consideration.") (quoting Healy
v. Brewster, 59 Cal.2d 455, 463, 30 Cal.Rptr. 129 (1963) (internal citations omitted)).

10

in the commercial market for goods and services.  McKell v. Washington Mut., Inc., 142 Cal.App.4th 1457, 1470, 49 Cal.Rptr.3d 227 (Cal.App. 2 Dist. 2006).  To allege a UCL claim, a plaintiff must show that the defendant's business practice was "unlawful, unfair, or fraudulent" by stating with reasonable particularity the facts supporting the violations.  Cal. Bus. & Prof. Code § 17200; Khoury v. Maly's of California, Inc., 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (Cal.App. 2 Dist. 1993). Although the UCL's scope is broad, violations that sound in fraud must meet the pleading requirements under Federal Rule of Civil Procedure 9(b), which require the "who, what, when, where, and how" of the misconduct charged.[4]  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs' allegations set forth in the FAC in support of their UCL claim are not stated with sufficient particularity.  While plaintiffs allege that defendant assessed improper or excessive late fees, there is no mention of the amount of such fees, when and why they were assessed, if plaintiffs paid the fees, the identity of any of defendant's representatives who were involved in assessing and/or collecting the fees, or, more importantly, why the fees were improper and excessive.  Nor do plaintiffs identify the individual or individuals whom they allege falsely assured them that foreclosure would be postponed.  As for plaintiffs' allegation that the foreclosure was "improper," this assertion is too conclusory to allege a UCL violation.  Moreover, to the extent plaintiffs base their UCL claim on the allegation that defendant violated California Civil Code § 2923.6 by engaging in "dual tracking," plaintiffs' allegations are insufficient for the reasons discussed infra, i.e., plaintiffs have not established that Section 2923.6 applies to their case. The Court shall provide plaintiffs the opportunity to amend to allege sufficient facts to support a UCL claim.  In so amending, plaintiffs must also sufficiently allege that they suffered injury in fact and that they have lost money or property as a result of the unfair competition.  See Cal. Bus. & Prof. Code § 17204.

---

[4]   Federal Rule of Civil Procedure 9(b) states that in alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b)'s particularity requirement applies to state-law causes of action.  Vess, 317 F.3d at 1103.

For these reasons, the Court **grants** the Motion to Dismiss and **dismisses** the UCL cause of action **with leave to amend**.

### 5.    Negligence

Defendant next argues that plaintiffs' fourth cause of action for negligence should be dismissed because it owed no duty of care to plaintiffs.  (Motion at 10-11).

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  Phillips v. TLC Plumbing, Inc., 172 Cal.App.4th 1133, 1139, 91 Cal.Rptr.3d 864 (Cal.App. 4 Dist. 2009) (quotations and citation omitted).  In California, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. . . .  Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender."  Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (Cal.App. 3 Dist. 1991) (citations and quotations omitted).

Although there appear to be inconsistent decisions regarding whether loan modifications are within the range of activities of a conventional money lender, this Court finds persuasive the cases that conclude that activities related to loan modifications fall within a lender's traditional money-lending role.  See Rosenfeld v. Nationstar Mortg., LLC, 2013 WL 4479008, at *6 (C.D. Cal. Aug. 19, 2013) ("The Court concludes, consistent with the weight of recent decisions by other district courts, that activities related to loan modifications fall squarely within defendants' traditional money-lending role."); Alvarado v. Aurora Loan Services, LLC, 2012 WL 4475330, at *6 (C.D. Cal. Sep. 20, 2012) ("Plaintiff's interpretation of loan modifications as outside the activities of a conventional money lender is inaccurate as '[n]umerous cases have characterized a loan modification as a traditional money lending activity.'") (quoting Settle v. World Sav. Bank, F.S.B., 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012)); Argueta v. J.P. Morgan Chase, 2011 WL 2619060, at *5 (E.D. Cal. Jun. 30, 2011) (allegations that lender was processing loan modification application and was obligated to do so reasonably to protect plaintiff against unreasonable risks

12

1    were insufficient to suggest lender owed plaintiff a duty of care); <u>Johnston v. Ally Financial Inc.</u>,

2    2011 WL 3241850 (S.D. Cal. Jul. 29, 2011) ("In addition, loan modification is an activity that is

3    intimately tied to Defendant's lending role.") (quotations and citation omitted); <u>but</u> <u>see</u> <u>Ansanelli</u>

4    <u>v. JP Morgan Chase Bank, N.A.</u>, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) (concluding that

5    engaging in loan modification negotiations went beyond the traditional money-lender role).[5]

6        The district court in <u>Alvarado v. Aurora Loan Services, LLC</u>, gave the following rationale for

7    concluding that "offering loan modifications is sufficiently entwined with money lending so as to

8    be considered within the scope of typical money lending activities":

9            If money lending institutions were held to a higher standard of care by
             offering a service that could benefit borrowers whose circumstances
10           have changed, the money lender would be discouraged from leniency
             and would assert their rights to reclaim the property upon the
11           borrower's default. The conventional-moneylender test shall be
             sufficient to determine that there is no duty of care owed in servicing
12           Plaintiff's mortgage loan and loan modification.

13   2012 WL 4475330, at *6; <u>see</u> <u>also</u> <u>Aspiras v. Wells Fargo Bank, N.A.</u>, __ Cal.Rptr.3d __, 2013 WL

14   5229769, at *9 (Cal.App. 4 Dist. Aug. 21, 2013) (agreeing with federal district courts that held

15   "offering loan modifications is sufficiently entwined with money lending so as to be considered

16   within the scope of typical money lending activities" and declining to impose a duty of care on the

17   lender in handling the plaintiffs' loan modification) (citing <u>Alvarado</u>, 2012 WL 4475330, at *6).

18       Based on the above authority, the Court concludes that plaintiffs have not established that

19   defendant went beyond the conventional role of money lender such that defendant owed them a

20   duty of care.   However, to the extent plaintiffs may be able to assert additional facts to

21   demonstrate that defendant acted outside the conventional money-lender role and thus owed a

22   duty of care, the Court will allow plaintiffs the opportunity to amend.  Accordingly, Court **grants**

23   the Motion to Dismiss and **dismisses** the negligence cause of action **with leave to amend**.

24   /

25

26

27       [5]  In <u>Rosenfeld</u>, the district court noted that <u>Ansanelli</u> "goes against the general consensus

28   view that loan modifications are closely tied to financial institutions' routine lending activities."
     <u>Rosenfeld</u>, 2013 WL 4479008, at *6 n.4.

**6.      Violation of California Civil Code § 2923.6**

In plaintiffs' fifth cause of action, they allege that defendant violated California Civil Code § 2923.6.  (FAC ¶¶ 36-41).  Defendant asserts in the Motion that Section 2923.6 did not become law until January 1, 2013, and does not apply retroactively, and therefore plaintiffs cannot state a valid claim because the events at issue in the FAC took place prior to the effective date of the Homeowner Bill of Rights.  (Motion at 12-13).  Plaintiffs do not address this cause of action in the Opposition.

As mentioned <u>supra</u>, a lender's practice of negotiating with homeowners in default on their loans for a loan modification while simultaneously advancing the foreclosure process is commonly referred to as "dual tracking."  In July 2012, California passed legislation referred to as "The California Homeowner Bill of Rights" ("HOBR") which offers homeowners greater protection during the foreclosure process.  In particular, a provision of the HOBR, California Civil Code § 2923.6(c), prohibits dual tracking.  <u>See</u> <u>Singh v. Bank of America, N.A.</u>, 2013 WL 1858436, at *2 (E.D. Cal. May 2, 2013).  The HOBR went into effect on January 1, 2013, and does not apply retroactively. <u>Emick v. JPMorgan Chase Bank</u>, 2013 WL 3804039, at *3 (E.D. Cal. Jul. 19, 2013); Cal. Civ. Code § 2923.6(b) (2103).  Of relevance here, Section 2923.6(c) of the HOBR states:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

In the FAC, plaintiffs assert:  "Defendant Nationstar's actions are in clear violation of the California Homeowner[ ] Bill of Rights' restrictions on dual tracking.   Plaintiffs' request for

1  modification was not denied; in fact, upon each of Plaintiffs' diligent status inquiries, [defendant's]

2  representatives confirmed they were still reviewing Plaintiffs' loan modification package.  Yet

3  nevertheless, foreclosure was commenced and . . .an illegal sale was conducted."  (FAC ¶ 39).

4          Plaintiffs' allegations in the FAC are not sufficient to state a claim under Section 2923.6.

5  Although plaintiffs allege that they completed a loan modification application and submitted all

6  requested documentation in an attempt to avoid foreclosure (FAC  ¶ 19), they do not specify

7  anywhere in the FAC the date(s) on which the application and supporting documentation were

8  filed.  Thus, plaintiffs have not shown that their loan modification application was completed after

9  January 1, 2013, when Section 2923.6 went into effect.  It follows, therefore, that plaintiffs have

10  not alleged sufficient facts to demonstrate that Section 2923.6 applies in this action.

11          Accordingly, with respect to the fifth cause of action, the Motion to Dismiss is **granted** and

12  plaintiffs' HOBR claim is dismissed.  Furthermore, the Court **grants leave to amend** to allow

13  plaintiffs the opportunity to allege sufficient facts to state a claim pursuant to Section 2923.6 for

14  acts that occurred after January 1, 2013.

15                    **7.      Violation of 15 U.S.C. § 1641(g)**

16          In the sixth cause of action, plaintiffs allege that defendant, as the "creditor and/or the

17  servicer of the subject [Promissory] Note and mortgage," violated 15 U.S.C. § 1641(g) by failing

18  to provide plaintiffs notice after acquiring their mortgage in December 2012.  (FAC ¶¶ 43-47).

19          The Truth in Lending Act, 15 U.S.C. § 1641(g) ("TILA"), requires the new owner or assignee

20  of a mortgage loan to notify a borrower in writing of any transfer within 30 days of the transfer.

21  Defendant argues that plaintiffs have failed to state a claim under 15 U.S.C. § 1641(g) because

22  they have not alleged any actual damages related to the alleged lack of notice.  (Motion at 13-14).

23  Courts have concluded, however, that to recover for a violation of Section 1641(g), a litigant may

24  allege either actual or statutory damages.  See Flemister v. Citibank, N.A., 2012 WL 6675273, at

25  **3-5  (C.D. Cal. Dec. 20, 2012) (concluding that the plaintiff may recover statutory damages for

26  a violation of Section 1641(g)); Wise v. Wells Fargo Bank, N.A., 850 F.Supp.2d 1047, 1053-54

27  (C.D. Cal. Mar. 23, 2012) ("Plaintiff correctly notes that under TILA, a Plaintiff must allege either

28  actual or statutory damages."); see also 15 U.S.C. §§ 1640(a) (allowing recovery for violations of

Section 1641(g) for (1) actual damages, or (2) statutory damages that may include (a) damages equal to twice the amount of any finance charge or (b) for a credit transaction secured by real property or a dwelling, an amount not less than $400 and not greater than $4000).

Here, plaintiffs have, at a minimum, alleged statutory damages.  (<u>See</u> FAC ¶ 47). Accordingly, the Court **denies** the Motion as to this cause of action.

## CONCLUSION

Based on the above, the Court **grants** defendant's Motion to Dismiss as to plaintiff's causes of action for breach of oral contract, violation of California Business & Professions Code § 17200 <u>et</u> <u>seq.</u>, negligence, and violation of California Civil Code § 2923.6, and gives plaintiffs leave to amend their First Amended Complaint as set forth below.  The Court **denies** the remainder of the Motion to Dismiss.

**No later than October 18, 2013**, plaintiffs shall file a Second Amended Complaint attempting to cure the deficiencies set forth herein.  Defendant's responsive pleading is due consistent with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED: October 4, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE