ORIGINAL

1  Jeremy J. Alberts, State Bar No. 273290
   Batkhand Zoljargal, State Bar No. 262918
2  THE ALBERTS FIRM
3  1600 N. Broadway, Suite 1010
   Santa Ana, CA 92706
4  Telephone: (714) 441-1144; FAX: (714) 547-7633
5  bzoljargal@albertsfirm.com

6  Attorneys for Plaintiffs

7

8          UNITED STATES DISTRICT COURT
9   CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11  PETER FLORES and SYLVIA        |  CASE: 2:13-CV-03898-pla
12  FLORES,                         |
                                    |  Assigned to Hon. Paul L. Abrams
13          Plaintiffs,             |
                                    |  PLAINTIFFS' SECOND
14      vs.                         |  AMENDED COMPLAINT FOR:
15  NATIONSTAR MORTGAGE LLC, a      |  (1) PROMISSORY ESTOPPEL
16  Delaware Limited Liability Company |  (2) VIOLATION OF
    and DOES 1 through 100, inclusive, |       CALIFORNIA BUSINESS
17                                  |       AND PROFESSIONS CODE
18          Defendants.             |       §17200, ET SEQ.
                                    |  (3) VIOLATION OF THE
19                                  |       HOMEOWNER'S BILL OF
20                                  |       RIGHTS (CAL. CIV. CODE
                                    |       SECTION 2923.6)
21                                  |  (4) VIOLATION OF 15 U.S.C.
22                                  |       1641(g)
23

24

25

26      **COME NOW** Plaintiffs, Peter Flores and Sylvia Flores, and, for cause of
27  action against Defendants, allege and state as follows:
28

-1-
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## Parties

1. **Plaintiffs:** Peter Flores and Sylvia Flores (hereinafter "Plaintiffs") are, and at all times herein mentioned were, over the age of 18 and residents of the County of Los Angeles, State of California.

2. **Defendant:** Nationstar Mortgage LLC (hereinafter "Nationstar") is, and at all times herein mentioned was, a Delaware limited liability company, maintaining offices and conducting business in the County of Los Angeles, State of California.

3. **Defendants:** Plaintiffs are currently unaware of the true identities and capacities of Defendants designated DOES 1 – 100, inclusive, and therefore sue them by such fictitious names. Plaintiffs are informed, believe and thereon allege that each of these Defendants was, in some manner, proximately responsible for Plaintiffs' damages. Once these parties' true identities and capacities are ascertained, Plaintiffs will amend this Complaint accordingly.

4. Plaintiffs are informed, believe and thereon allege that, at all times mentioned herein, Defendants designated DOES 1 – 100 are individuals and/or business entities whose forms are currently unknown to Plaintiffs, and were/are agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint.

5. Plaintiffs are informed, believe and thereon allege that, at all times herein mentioned, Defendants were acting as the agents, servants, employees, alter egos, superiors, successors in interest, joint venturers, and/or co-conspirators of each of their co-defendants and, in doing the acts herein alleged, were acting were acting within the course and scope of their authority as such, and with the permission and consent of their co-defendants. Consequently, each Defendant sued herein is jointly and severally liable to Plaintiffs for damages sustained as a result of the conduct alleged.

6. Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an

allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was duly authorized by corporate managerial officers or directors, and that the act or omission was subsequently ratified by the officers and directors of the corporation or business entity. As a result of their business activities, Defendants, and each of them, were subject to and required to comply with the California Business and Professions Code and the California Civil Code.

7.    Plaintiffs are informed, believe and thereon allege that Defendants, and each of them, are in sole possession, custody or control of e-mails, notes of telephone conversations, log entries, recorded messages and other forms of communication or correspondence that identify the dates, times, and persons, including, but not limited to, Defendants' employees, representatives and/or agents who spoke with Plaintiffs; the content of those conversations, including, but not limited to information, disinformation, false promises, etc. that form the basis of Plaintiffs' allegations.

8.    Plaintiffs are informed, believe and thereon allege that reasonable discovery and investigation will reveal the dates, times, and persons, including, but not limited to Defendants' employees, representatives, and/or agents, who spoke with Plaintiffs; the content of those conversations, including, but not limited to information, disinformation, false promises, etc. that form the basis of Plaintiffs' causes of action. Plaintiffs are informed, believe and thereon allege that such discovery and investigation will allow Plaintiffs to successfully amend this Complaint to satisfy the requisite specificity for each of the allegations contained herein.

**Jurisdiction and Venue**

9.    This Court has original jurisdiction over the claims in this action based on 28 U.S.C. § 1332(a) which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.

10.     This Court has jurisdiction to render the declaratory judgment Plaintiffs seek pursuant to 28 U.S.C. § 2201.

11.     Venue is proper within this district pursuant to 28 U.S.C. § 1391(b), because: (i) the real property exists within said district, and/or (ii) the Defendants, and each of them, have done or are doing business within the district.

## Factual Background

12.     On or about March 3, 2006, Plaintiffs entered into a consumer loan transaction with First Guaranty Financial Corporation (hereinafter "First Guaranty") to refinance a single family property located at 10304 Bellman Avenue, Downey, California 90241 (hereinafter "Subject Property").  As part of the loan transaction, Plaintiffs executed a promissory note in favor of First Guaranty (hereinafter "Promissory Note") and granted the latter a security interest in the subject property in the form of a deed of trust, recorded with the Los Angeles County Recorder's Office (hereinafter "Deed of Trust").

13.     Plaintiffs are informed and believe and thereon allege that, subsequent to this transaction, the Promissory Note was sold and/or transferred to Aurora Loan Services and then to Defendant Nationstar in December of 2012. Defendant Nationstar never notified Plaintiffs of this transfer according to 15 U.S.C. 1641(g).

14.     For reasons which will be explained in far greater detail below, Plaintiffs ultimately encountered difficulties making monthly payments.  In an attempt to renegotiate the terms of the loan, come current on the mortgage and thereby remain in lawful possession, Plaintiffs and Nationstar began actively negotiating a revised payment plan; all the while, Nationstar's representatives assured Plaintiffs that, as parties entitled to foreclose upon the subject property in the event of default, they would refrain from doing so, until and unless the parties were unable to reach an agreement.

15.     More specifically, Plaintiffs submitted a loan modification package to Defendant Nationstar in or around January 2013. Defendant Nationstar's

-4-
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

representatives requested more documents from Plaintiffs from January 2013 to March 2013 which were submitted by Plaintiffs in timely manner and requested mode.

16.    Nevertheless, and before any such agreement was reached, Defendants exercised their rights under the security instrument by instituting foreclosure proceedings upon the subject property, which was subsequently taken back by Defendant Nationstar at a non-judicial foreclosure sale on or around March 22, 2013. All of this occurred, despite Plaintiffs' continued willingness to renegotiate the payment terms under the existing mortgage and – more importantly – in direct contravention of the assurances Plaintiffs were given.[1]

17.    Yet, on or around March 28, 2013, Plaintiffs received a document titled "Mortgage Loan Statement" from Stephen Ellis, a "Foreclosure Prevention Specialist" assigned by Defendant Nationstar to Plaintiffs. The document was dated March 19, 2013 and stated that their next amount was due on April 01, 2013.

## FIRST CAUSE OF ACTION

### (Promissory Estoppel)

### (Against Defendants Nationstar and DOES 1-100)

18.    Plaintiffs incorporate by reference all prior paragraphs as if fully set forth herein.

19.    As noted above, Defendants' representatives assured Plaintiffs that foreclosure proceedings would not be instituted until and unless the parties were unable to reach a full and final agreement as to the specific terms of payment. Taken

[1] Such an outcome is hardly unique; Defendant's practice in this respect has been termed, within the mortgage lending context, "dual tracking," whereby loan modification negotiations are handled by a specified department within a given lender's business, while another, entirely distinct department is charged with default monitoring and the institution of foreclosure proceedings. These departments typically operate independently of one another, foreclosure being filed without inquiry as to ongoing negotiations. As such, one would be hard-pressed to find a more appropriate instance to use the oft-quoted idiom, *one hand not knowing what the other is doing.*

together, these assurances constituted a promise not to foreclose, conditioned only upon Plaintiffs' continued willingness to renegotiate payment terms.[2]

20.    Defendants should have reasonably expected that Plaintiffs would rely on this promise; further, Plaintiffs are informed and believes and thereon allege that Defendants fully intended that Plaintiffs rely upon their assurances.

21.    Plaintiffs did in fact rely on these representations by completing a loan modification application and submitting all requested documentation, instead of pursuing alternative courses of action in order to avoid foreclosure including, but not limited to, further refinancing with another lender, marketing and selling the subject property, or filing a petition under Chapters 7 or 13 of the United States Bankruptcy Code, any one of which would have been a viable option.

22.    Plaintiffs had no reason to doubt the veracity of the assurances offered by Defendants' representatives, and actively participated in loan modification negotiations in a good faith attempt to save the subject property from foreclosure.  In this respect, Plaintiffs' reliance was entirely justifiable.

23.    As such, Defendants were estopped from taking any actions contrary to their assurances, which, as noted above, were flatly contradicted by their subsequent institution of foreclosure proceedings.[3]

24.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at the trial of this action.

///

///

---

[2] To the extent these assurances were made by defendant's employees, within the course and scope of such employment, they can be viewed as having been made on behalf of defendant, as principal. *See, e.g.*, Cal. Civ. Code §2334 ("[a] principal is bound by acts of his agent. . .to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof"); *See also* Restatement (Third) of Agency §6.11 (2006).

[3] *See, e.g.*, Garcia v. World Savings Bank (2010) 183 Cal.App.4th 1031 (borrowers' material change of position, based upon lender's oral promise to postpone foreclosure sale, held sufficient to sustain a claim for promissory estoppel).

## SECOND CAUSE OF ACTION

### (Unfair Business Practices –

### California Business and Professions Code §17200, et seq.)

### (Against Defendants Nationstar and DOES 1-100)

25. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth herein.

26. California Business and Professions Code Section 17200 prohibits unfair business practices, which includes any "fraudulent business act or practice" and conduct which is "likely to deceive" within the meaning Section 17200.

27. As stated more fully above, Defendants' acts were, and are, likely to deceive, and thus constitute unfair business practices. More specifically, Defendants engaged in deceptive practices with respect to mortgage loan servicing, the foreclosure of residential property, and related matters by:

(a) Assessing improper or excessive late fees;

(b) Instituting improper or premature foreclosure proceedings; and

(c) Falsely assuring borrowers that foreclosure will be postponed while simultaneously proceeding with the process.

(d) Violating California Civil Code, Section 2329.6.

28. The foregoing acts and practices have caused substantial harm to Plaintiffs; as such, Plaintiffs have suffered general and special damages in an amount to be determined at the trial of this action.

## THIRD CAUSE OF ACTION

### (Violation of Homeowner's Bill of Right, California Civil Code Section 2923.6)

### (Against Defendants Nationstar and DOES 1-100)

29. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth herein.

30. Signed into law on July 11, 2012 and effective January 1, 2013, the California Homeowner's Bill of Rights specifically prohibits the practice commonly

1    known as "Dual Track Foreclosure," whereby lenders and loan servicers continue to

2    advance the foreclosure process with respect to borrowers whose loans are

3    simultaneously being reviewed for modification eligibility.

4        31.    California Civil Code Section 2923.6 has now been amended to reflect

5    this prohibition.  Section 2923.6(c) now reads: "If a borrower submits a complete

6    application for a first lien loan modification offered by, or through, the borrower's

7    mortgage servicer, a mortgagee, trustee, beneficiary, or authorized agent shall not

8    record a notice of default or notice of sale, or conduct a trustee's sale, while the

9    complete first lien loan modification application is pending." As amended, the

10   California Civil Code also provides borrowers with a post-foreclosure cause of action

11   to recover actual damages or, upon a court's finding of willful, reckless and/or

12   intentional material violation, treble damages or statutory damages of $50,000.00,

13   whichever is greater.[4]

14       32.    California Civil Code 2923.6(c)(1) further provides that a mortgage

15   servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice

16   of default or notice of sale or conduct a trustee's sale until the "[m]ortgage servicer

17   makes a written determination that the borrower is not eligible for a first lien loan

18   modification, and any appeal period pursuant to subdivision (d) has expired."

19   Subdivision (d) of Section 2923.6 provides 30 days from the date of a written denial

20   for a borrower to appeal the decision denying a loan modification.

21       33.    As such, Defendant Nationstar's actions are in clear violation of the

22   California Homeowners Bill of Rights' restrictions on dual tracking. Plaintiffs'

23   request for modification was not denied; in fact, upon each of Plaintiffs' diligent

24   status inquiries, Nationstar representatives confirmed they were still reviewing

25   Plaintiffs' loan modification package.  Yet nevertheless, foreclosure was commenced

26   and, as alleged above, an illegal sale was conducted.

27

28   [4] Cal. Civ. Code §§ 2924.12(b), 2924.19(b).

-8-
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

34.  More specifically, Plaintiffs submitted a loan modification package to Defendant Nationstar in or around January 2013. Defendant Nationstar's representatives requested more documents from Plaintiffs from January 2013 to March 2013 which were submitted by Plaintiffs in timely manner and requested mode.

35.  Nevertheless, and before any such agreement was reached, Defendants exercised their rights under the security instrument by instituting foreclosure proceedings upon the subject property, which was subsequently taken back by Defendant Nationstar at a non-judicial foreclosure sale on or around March 22, 2013. All of this occurred, despite Plaintiffs' continued willingness to renegotiate the payment terms under the existing mortgage and – more importantly – in direct contravention of the assurances Plaintiffs were given.

36.  Yet, on or around March 28, 2013, Plaintiffs received a document titled "Mortgage Loan Statement" from Stephen Ellis, a "Foreclosure Prevention Specialist" assigned by Defendant Nationstar to Plaintiffs. The document was dated March 19, 2013 and stated that their next amount was due on April 01, 2013.

37.  The trustee which foreclosed on Plaintiffs' Property is likewise in violation of California Civil Code 2923.6(c) for conducting a sale on March 22, 2013, while Plaintiffs' complete loan modification was pending.

38.  As a direct and proximate result of Defendants' statutory violations, Plaintiffs have since lost their home; they have thus suffered, and continue to suffer, damages in an amount to be determined according to proof at the trial of this action.

## FOURTH CAUSE OF ACTION

### (Violation of 15 U.S.C. 1641(g))

### (Against Defendants Nationstar and DOES 1-100)

39.  Plaintiffs incorporate by reference all prior paragraphs as if fully set forth herein.

85.  Plaintiffs resided in the Subject Property and utilized it as their principal

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

residence.

86.  The new subsection (g) added to § 131 TILA by § 404 of The Helping Families Save Their Homes Act of 2009 states:

(g) Notice of New Creditor –

(1)  In General. – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor."

40.  Failure to comply with the requirements of this subsection 131(g) of TILA may result in civil liability for actual damages, legal fees and statutory damages under §130(a) of TILA.

41.  At all relevant times hereto, Defendant Nationstar was and is the creditor and/or the servicer of the subject Note and mortgage.

42.  At some time in or around December 2012, the subject Note and mortgage securing same were sold or otherwise transferred to Defendant Nationstar.

43.  Defendants did not send Plaintiffs a notice of such sale or transfer of the mortgage Loan within 30 days pursuant to TILA § 131(g) [15 U.S.C. § 1651(g)].

44.  Pursuant to 15 U.S.C. § 1640(a), Plaintiffs are entitled to actual damages, statutory damages, costs, and attorney's fees.

///

-10-
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## Prayer for Relief

**WHEREFORE,** Plaintiffs pray for judgment in their favor, and against Defendants, as it applies to their causes of action, such that:

i.    Plaintiffs be awarded compensatory damages according to proof;

ii.    Plaintiffs be awarded statutory or treble damages as prescribed by the statutes;

iii.    Plaintiffs be awarded attorney's fees as provided by statutes;

iv.    Plaintiffs be awarded costs of suit incurred herein;

v.    Plaintiffs be awarded interest and the prevailing legal rate of interest on any damages to the extent permissible under the law; and

vi.    Such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may deem just and proper.

## Demand for Jury Trial

Plaintiffs hereby demand a trial by jury.

DATED: October 17, 2013           THE ALBERTS FIRM

By: _____
Jeremy J. Alberts
Batkhand Zoljargal,
Attorneys for Plaintiffs,
Peter Flores and Sylvia Flores

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1600 N. Broadway, Suite 1010Santa Ana, California 92706.

On October 17, 2013, I served the foregoing document, described as Plaintiff's Second Amended Complaint on all interested parties in this action as follows:

**AKERMAN SENTERFITT LLP**
Parisa Jassim
parisa.jassim@akerman.com
Justin D. Balser
Justin.balser@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, CA 90017-5433
*Attorney for DefendantsNatiostar Mortgage LLC*

**[X]     BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

**[X]     (FEDERAL)** I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 17, 2013 at Santa Ana, California.

Jesse Vera

**PROOF OF SERVICE**